GRIFFIS, P.J.,
for the Court:
¶ 1. This case turns on whether a residence is a “modular” home as opposed to a “manufactured” or “mobile” home. Hudson Holliday and Darrin Harris, the property developers, seek to enforce protective covenants on the property. They claim the current landowners placed a disallowed “manufactured” home on the property. Betty Marie and Earl Lavon Nelson claim that they placed a “modular” home on their property, which was within the protective covenants. After both parties filed motions for summary judgment, the chancellor granted summary judgment in favor of Holliday and Harris without a hearing. The Nelsons now appeal. We find a genuine issue of a material fact in dispute. Therefore, we reverse and remand for further proceedings.
FACTS
¶ 2. Holliday and Harris developed a parcel of real property located on H. Burge Road in Pearl River County, Mississippi. They properly executed and recorded protective covenants that covered the property.
¶ 8. On February 24, 2006, Holliday and Harris conveyed to James and Suzanne Yareha by warranty deed a parcel of the property subject to the protective covenants. On January 14, 2008, the Varehas conveyed the parcel by warranty deed, subject to the protective covenants, to Betty and Earl Nelson. On February 27, 2008, the Nelsons placed a residential structure on the parcel.
¶ 4. On April 7, 2008, Holliday and Harris filed a complaint for enforcement of declaration of protective covenants, for removal of manufactured housing, and for preliminary and permanent injunction. The complaint alleged that the protective covenants provided that “[mjanufactured housing will not be allowed on the property.” [1] The complaint also alleged that the residence the Nelsons placed on the property was “manufactured housing” and in violation of the protective covenants.
¶ 5. On April 29, 2008, the Nelsons filed their answer and counterclaim. Both Betty and Earl Lavon Nelson signed this pleading, their signature was acknowl *456 edged and it was stated under oath that the “matters, facts, and things set out in the above and foregoing complaint are true and correct.” In this pleading, the Nelsons denied that the residence was a “manufactured home” and claimed that it was a “modular home.” The Nelsons attached three documents. Exhibit “A” was a letter from the State Fire Marshal that stated this “Frankin-built structure, bearing serial number ..., is considered a modular home.” Exhibit “B” was a compilation of plans and specifications for the residence, which were approved by the State Fire Marshal. Exhibit “C” was a letter dated November 29, 2007, from Hudson Holliday, which read “[tjhis is to clarify that it is permissible to construct or place a modular home on the property that we sold along H. Burge Road.” The Nelsons’ counterclaim asked for damages and sanctions under the Litigation Accountability Act.
¶ 6. On January 15, 2010, the Nelsons filed a motion for summary judgment. In the motion, the Nelsons argued that they were entitled to summary judgment because the residence in question was a “modular home,” which did not violate the covenant.
¶ 7. On November 3, 2010, Holliday and Harris responded and filed a cross-motion for summary judgment. They argued that the residence was “manufactured housing” and in violation of the covenant. To support their motion, Holliday and Harris attached several documents including the Nelsons’ response to the requests for admissions, and they cited the statutory definitions in Mississippi Code Annotated section 75-49-3 (Rev.2000). The record does not contain a response from the Nelsons.
If 8. The record does not include a transcript of a hearing on the motions for summary judgment. On December 23, 2010, the chancellor denied the Nelsons’ motion and granted Holliday and Harris’s motion for summary judgment. The chancellor found the Nelsons’ residence was manufactured housing, found that the residence was in violation of the covenants, and ordered the immediate removal of the residence. It is from this judgment that the Nelsons now appeal.
STANDARD OF REVIEW
¶ 9. The standard of review of an order granting summary judgment is de novo. PPG Architectural Finishes, Inc. v. Lowery, 909 So.2d 47, 49 (¶ 8) (Miss.2005) (citing Hurdle v. Holloway, 848 So.2d 183, 185 (¶ 4) (Miss.2003)). It is well settled that “[a] summary judgment motion is only properly granted when no genuine issue of material fact exists. The moving party has the burden of demonstrating that no genuine issue of material fact exists within the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits.” Id. (internal citations and quotations omitted).
ANALYSIS
¶ 10. The ultimate issue presented in this case will be decided based on whether the Nelsons’ residence is considered a “modular” home or a “manufactured” home. The chancellor determined that it was a “manufactured” home and granted Holliday and Harris’s motion for summary judgment. The Nelsons argue that the chancellor’s summary judgment should be reversed because there were genuine issues of material fact in dispute. Thus, this Court must determine whether there are any genuine issues of material fact in dispute and whether Holliday and Harris are entitled to a judgment as a matter of law. M.R.C.P. 56. We must determine whether there are any issues to be tried.
¶ 11. The Nelsons refer the Court to their sworn pleading and the documents *457 attached. In the pleading, the Nelsons stated that the residence was a “modular home.” They included three attachments. First, they offered a letter a letter dated April 16, 2008, from the Chief Deputy State Fire Marshal to the seller of the residence, Lonnie Woods of Woods Home Center, LLC. The letter stated that “the noted Franklin-built structure, bearing the serial number ALFRH-038-13636 AB, is considered a modular home.” The Chief Deputy State Fire Marshal is authorized by statute to implement and enforce the regulations involving this chapter of the statute. See Miss.Code Ann. § 75-49-3(g). Second, the Nelsons offered approximately twenty-three pages of engineering plans and specifications for the residence. Third, they offered a letter from Holliday; this letter stated that “it is permissible to construct or place a modular home on the property.”
¶ 12. Holliday and Harris offered three documents to support their motion for summary judgment. First, they offered what they refer to as the “affidavit of Gregory Rodriguez ... indicating that the home could be moved in a matter of hours at a reasonable expense and is not placed upon a foundation.” The document states:
DROD Mobile Home Transport
[address and phone no.]
Movement of 32 x 80 on homeowners land. Breakdown would consist of 6 to 8 hours depending on inside trim, and carpet. Average estimate is between $4,500.00 to $4,800 within 50 mile radius. Any attachments such as porches, decks, would consist in more time and labor which would alter estimate.
State of Mississippi
County of Pearl River
Personally appeared before me, the undersigned authority in and for the above referenced county and state, the within named Darren Rodriguez, who, after being by me first duly sworn, states on his oath that the matters, facts and things set out in the above and foregoing are true and correct as therein stated.
This, the 13th day of October, 2010.
[Signed and notarized]
This “affidavit” does not state whether “Gregory Rodriguez” and “Darren Rodriguez” are the same person. The document appears to be a bid to remove a “mobile” home. However, the “affidavit” does not identify the Nelsons’ residence as the “mobile” home that is to be removed. This Court does not read the “Affidavit of Gregory Rodriguez” as Holliday and Harris characterize it in their motion. Indeed, the “affidavit” does not provide much specificity as to the personal knowledge of Rodriguez. This “affidavit” offers little if any information to support the motion for summary judgment.
¶ 13. Second, Holliday and Harris attached the Nelsons’ responses to requests for admissions. The Nelsons admitted the following:
REQUEST NO. 2: Do you admit that Defendants received the attached correspondence from Plaintiffs’ counsel? [No correspondence is in the record.]
RESPONSE: Admitted.
REQUEST NO. 3: Do you admit the home in controversy does not have a power meter physically attached to the exterior of the home?
RESPONSE: Admitted.
REQUEST NO. k: Do you admit that the power meter for the home in controversy is located on a separate wooden pole near the home?
RESPONSE: Admitted.
REQUEST NO. 5: Do you admit that no chain wall was constructed as a foundation for the home?
RESPONSE: Admitted.
*458 REQUEST NO. 6: Do you admit that tie-downs or anchor straps were used to anchor the home to the ground?
RESPONSE: Admitted.
REQUEST NO. 7: Do you admit that the anchor straps used to secure the home were screwed into the earth?
RESPONSE: Admitted.
REQUEST NO. H: Do you admit that the steps for the dwelling are not attached to the home, but rather are either fiberglass or concrete structures placed there to provide access?
RESPONSE: Admitted.
REQUEST NO. 16: Do you admit that no crane was used in the location of the home in controversy on the property?
RESPONSE: Admitted.
REQUEST NO. 17: Do you admit that the home in controversy was delivered by transport truck in two sections?
RESPONSE: Admitted.
REQUEST NO. 19: Do you admit that the home vendor advised Defendants the Hampton Bay home they purchased was a “modular” home?
RESPONSE: Admitted.
REQUEST NO 20: Do you admit that the home vendor advised Defendants the Hampton Bay home they purchased was not “manufactured” housing?
RESPONSE: Admitted.
Holliday and Harris argued that these admissions established that the residence was not permanently fixed to the foundation. Several of the responses seem to indicate that the home placed on the Nelsons’ property was not permanently affixed to the land. However, the response to requests no. 19 and 20 seem to support the Nelsons’ argument that the home was a “modular” home and thus permissible to be placed on the property.
¶ 14. Third, Holliday and Harris attached a “copy of the advertisement of Woods Home Gallery where the mobile home was purchased dated June 6, 2008, that appeared in Swap Shop News indicating that Woods had the largest selection of ‘manufactured’ homes in Southwest Mississippi.” There is no supporting affidavit or any information to indicate how it is relevant to the home involved in this case.
¶ 15. Holliday and Harris’s motion for summary judgment argued the definitions of certain relevant terms in section 75-49-3, which states:
(a) “Manufactured home” means a structure defined by, and constructed in accordance with, the National Manufactured Housing Construction and Safety Standards Act of 1974, as amended (42 USCS 5401 et seq.), and manufactured after June 14,1976.
(b) “Mobile home” means a structure manufactured before June 15, 1976, that is not constructed in accordance with the National Manufactured Housing Construction and Safety Standards Act of 1974, as amended (42 USCS 5401 et seq.). It is a structure that is transportable in one or more sections, that, in the traveling mode, is eight (8) body feet or more in width and thirty-two (32) body feet or more in length, or, when erected on site, is two hundred fifty-six (256) or more square feet, and that is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes any plumbing, heating, air conditioning and electrical systems contained therein; except that such term shall include any structure which meets all the requirements and with respect to which the manufacturer voluntarily files a certification required by the commissioner and *459 complies with the standards established under this chapter.
(c) “Modular home” means a structure which is: (i) transportable in one or more sections; (ii) designed to be used as a dwelling when connected to the required utilities, and includes plumbing, heating, air conditioning and electrical systems with the home; (iii) certified by its manufacturers as being constructed in accordance with a nationally recognized building code; and (iv) designed to be permanently installed at its final destination on an approved foundation constructed in compliance with a nationally recognized building code. The term “modular home” does not include manufactured housing as defined by the National Manufactured Housing Construction and Safety Standards Act of 1974.
In essence, Holliday and Harris argue that there is no genuine issue of material fact in dispute and they are entitled to a judgment as a matter of law because the Nelsons’ residence is not on a permanent foundation so it cannot be determined to be “modular.”
¶ 16. Our de novo review requires that we examine the pleadings, admissions and affidavits and determine whether there is a genuine issue of a material fact in dispute. Neither party has objected to the consideration of the materials offered by the other. Therefore, we must consider all of the evidence submitted to determine whether a factual dispute exits. Having done so, we conclude that there is a genuine issue of a material fact in dispute over whether the residence was a “modular” or “manufactured” home. Finding a genuine issue of material fact in dispute, we conclude that this matter was not proper for a summary judgment. Therefore, we reverse the chancery court’s judgment, and we remand this case for further proceedings consistent with this opinion.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY. FAIR, J., NOT PARTICIPATING.

. Paragraph V of the complaint indicates that a copy of the protective covenants was attached. Yet the record before this Court does not include a copy of the protective covenants. In an action to enforce restrictive or protective covenants on land, a full and complete copy of such document should be attached to the complaint. M.R.C.P. 10(d). Likewise, a complete copy should be part of the record presented to this Court on appeal. M.R.A.P. 10(a).
Nevertheless, in Paragraph VI of the complaint, the complaint alleged that ‘‘[s]aid Declaration of Protective Covenants contains the following language, ‘Manufactured housing will not be allowed on the property.’ " The Nelsons' answer admitted the allegations of Paragraph VI except they denied that they were in violation of the covenants.